Affirmed and Opinion filed May 29, 2003









Affirmed and Opinion filed May 29, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NOS. 14-02-00314-CR

              
14-02-00315-CR &

          14-02-00316-CR

____________

 

SAMMY
JOSEPH MUSACHIA, Appellant

 

V.

 

THE
STATE OF TEXAS, Appellee

 



 

On Appeal from the
183rd District Court

Harris County, Texas

Trial Court Cause
Nos. 874,897; 893,962; and 893,963

 



 

O P I N I O N








In three separate
indictments, appellant, Sammy Joseph Musachia, was charged with indecency with
a child based on a single incident involving three victims: S.W., S.G., and
A.G.  See Act of May 29, 1993, 73d
Leg., R.S., ch. 900, '
1.01, sec. 21.11(a)(2), 1993 Tex. Gen. Laws 3586, 3616 (subsequently amended,
current version at Tex. Pen. Code Ann.
' 21.11(a)(2)(A) (Vernon
2003)).  A jury found appellant guilty of
all three charges and assessed punishment at two years’ confinement in the
Texas Department of Criminal Justice, Institutional Division for each of the
three charges.  The court imposed the
sentences for the offenses against S.W. and S.G. to run cumulatively and the
sentence for the offense against A.G. to run concurrently.

In ten issues, appellant
challenges the factual sufficiency of the evidence, the admissibility of
extraneous offense evidence, and omissions in the jury charge at the punishment
phase.  Concluding there is no reversible
error, we affirm.

I.  FACTUAL BACKGROUND








On April 12, 2001, at
approximately seven o’clock p.m., three eleven- and twelve-year old girls,
S.W., A.G., and S.G., were outside S.W.=s
house when they saw appellant driving a black truck on S.W.’s street.  Appellant pulled in and out of at least one
driveway and stopped in front of the girls at a stop sign.[1]  The girls approached the truck and briefly
spoke with appellant, who then allegedly exposed himself and began to
masturbate.  All three girls testified
they saw his penis and demonstrated what he was doing with it.  It was light outside and the girls could see
him clearly through the passenger side window of his truck.  S.W. testified she thought appellant was
wearing shorts, but she was not sure. 
After seeing appellant expose himself, the girls ran away from the
truck, and appellant drove away.  S.W.’s
niece, Holly Huetwohl, and Huetwohl=s
boyfriend, James Montgomery, came outside and the girls told them what
happened.  As the girls were explaining
what happened, the truck drove by again. 
The girls identified it, so Huetwohl and Montgomery followed the truck
and noted appellant’s license plate number. 
Huetwohl testified appellant was driving in an evasive manner, driving
over the posted speed limit of 20 miles per hour, and speeding up so they were
not behind him until he became stuck behind some cars.[2]  In separate photographic arrays, each girl
positively identified appellant as the offender.  Each girl also identified appellant at trial.

Appellant testified in his own defense.  Appellant admitted he spoke with the girls,
and he drove around in their neighborhood that day, but denied exposing himself
and masturbating.  On direct examination,
he claimed he was driving around looking for rental homes.  On cross examination, he testified he was not
looking for a house when he was on that street nor getting information about
houses in that neighborhood.  He
testified he was wearing blue jeans that day, and does not routinely wear
shorts.[3]  Appellant=s ex-wife testified he is very
modest.  Appellant testified he had
oversized tires on the truck, and it would be impossible for the girls to see
his lap from where they were standing. 
Appellant=s father and sister agreed appellant=s truck sits too high for anyone on
the outside to see inside.  Additionally,
appellant=s father, sister, ex-wife, and a
couple of appellant=s co-workers testified appellant is
known to be a truthful and honest person.

Dr. Harvey Rosenstock, M.D., qualified by the trial court as
an expert on sexology  and psychiatry,
testified appellant=s lifestyle was not consistent with the lifestyle of an
exhibitionist.  Rosenstock interviewed
appellant three times to formulate his opinion, but did not interview the
witnesses or any of appellant=s family members and friends.

In rebuttal, the State called S.D. for the stated purpose of
establishing appellant=s intent and motive. 
S.D., who was eleven years old at the time of the trial, was also an
alleged victim of indecent exposure by appellant in February 2001.  She testified she was rollerblading in a
neighborhood approximately eight miles from the neighborhood where S.W. lives
when appellant pulled up next to her at a stop sign.  He exposed his genitals and masturbated in
front of her.  He was driving a black
truck.[4]  It was light outside and she could see what
he was doing clearly.  She was able to
identify him from the photographic array and at trial.

II.  DISCUSSION

A.  Issue Ten:  Factual Sufficiency of the Evidence

1. 
Standard of Review

In issue ten, appellant challenges the factual sufficiency of
the evidence.  Our review of factual
sufficiency begins with the presumption the evidence is legally
sufficient.  Jones v. State, 944
S.W.2d 642, 647 (Tex. Crim. App. 1996). 
When conducting a factual sufficiency review, we view the evidence in a
neutral light favoring neither party.  Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).  When a defendant challenges the factual
sufficiency of the elements of an offense, the correct standard we must follow
requires us to determine whether (1) the proof of guilt is so obviously weak as
to undermine confidence in the jury=s verdict, or (2) the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof.  Zuliani
v. State, 97 S.W.3d 589, 593B94 (Tex. Crim. App. 2003);  Johnson, 23 S.W.3d at 11.  We must accord due deference to the fact
finder=s determinations, particularly those
determinations concerning the weight and credibility of the evidence.  Johnson, 23 S.W.3d at 9.  The verdict should be set aside only in order
to prevent a clearly wrong and unjust result. 
See Jones, 944 S.W.2d at 648.

2. 
Analysis








A person commits the offense of indecency with a child if,
with a child younger than 17 years and not the person=s spouse, the person, with intent to
arouse or gratify the sexual desire of any person, exposes any part of his
genitals, knowing the child is present.  See
Act of May 29, 1993, 73d Leg., R.S., ch. 900, '
1.01, sec. 21.11(a)(2), 1993 Tex. Gen. Laws 3586, 3616 (subsequently amended,
current version at Tex. Pen. Code Ann.
' 21.11(a)(2)(A) (Vernon
2003)). At trial, the only factual element in dispute was whether appellant
exposed his genitals.

The evidence in support
of the jury=s
verdict was primarily found in the eyewitness testimony from the three victims
of the charged offenses, as set forth in Part I, above (Factual
Background).  Appellant urges this court
to consider whether the evidence he presented at trial greatly outweighs the victims=
testimony.  Appellant bases his factually
insufficiency argument on testimony regarding three aspects of the incident:
(1) appellant=s
purpose for being in the neighborhood, supported by appellant=s testimony he was in the
neighborhood looking for rental houses; (2) appellant=s failure to show
consciousness of guilt, supported by Montgomery=s
testimony appellant did not drive in an evasive manner when followed by
Huetwohl and Montgomery; and (3) the impossibility of the victims= being able to see
appellant=s
lap, supported by multiple witnesses=
testimony appellant=s
truck was too high  for the girls to have
seen appellant=s
lap area.  There was conflicting evidence
on each of these points.

Appellant=s sister testified she
and her brother were looking for houses to rent in April 2001, and they were
looking in S.W.=s
neighborhood because she wanted to stay in the same school district for her
children.  She explained that one method
of house hunting they used was to drive around and find houses that were for
lease.  On direct examination, appellant
said he was driving around looking for rental houses on April 12, 2001.  However, on cross examination he said he was
not looking for houses on S.W.=s
street or writing down information about houses in that neighborhood.

Montgomery testified
appellant was driving at a normal rate of speed or slower, with no attempt at
evading them.  In Huetwohl=s opinion, however,
appellant was driving in an evasive manner because he was driving over the
speed limit of 20 miles per hour and seemed to be speeding up so they would not
be behind him.








After the three victims
testified they could clearly see appellant=s
lap, the defense called witnesses to refute this testimony.  Appellant=s
father testified he was familiar with the truck and had to step up to get in
it.  Appellant=s sister=s testimony was
consistent with his father=s
regarding the height of the truck.  She
also stated that she would not be able to see in the truck from the passenger=s side standing three to
five feet away from it.  She did not,
however, know whether her answers would change if she were standing on the
curb, but insisted no one could see inside if the windows were half-way up.  Appellant testified his truck had oversized
tires, raising the height by two inches, and making it impossible for someone
standing three to four feet from the side of the truck to see the lap area of
the driver.  Appellant, however, told his
own expert witness the three victims stuck their heads in his car.

What weight to give
contradictory testimonial evidence is within the sole province of the trier of
fact, because weight turns on the evaluation of credibility and demeanor.  Cain v. State, 958 S.W.2d 404, 408B409 (Tex. Crim. App.
1997).  We must show deference to the
jury=s findings.  Id. at 409.  A decision is not manifestly unjust merely
because the jury resolved the conflicting views of evidence in favor of the
State.  Id. at 410.

Appellant also points to
evidence regarding his own character: 
(1) appellant=s
own testimony that, as a paramedic, he frequently came into contact with people
in various states of dress and never acted inappropriately; (2) appellant=s former wife=s testimony appellant was
modest and never wore shorts; and (3) the expert=s
testimony appellant=s
behavior was not consistent with behavior of an exhibitionist.  This evidence relates to the credibility of
the defendant, and is an area reserved for the jury.  See Johnson, 23 S.W.3d at 7.  The jury is the sole judge of the credibility
of this witness and the weight to be given to the testimony.  Id.








Appellant=s factual sufficiency
argument fails because the jury is the sole judge of witness credibility.  See id.  The State=s
proof of appellant=s
guilt is not so obviously weak that it undermines confidence in the jury=s verdict; neither is the
State=s proof greatly
outweighed by contrary proof.  See Zuliani, 97 S.W.3d at 593B94.  Viewing all of the evidence in a neutral
light, we hold the evidence to be factually sufficient.

We overrule appellant=s issue ten.

B. 
Issues One through Three: 
Appellant’s Evidentiary Challenges to S.D.=s Testimony

In issues one and two, appellant argues S.D.=s testimony was inadmissible
propensity evidence and its admission violated Texas Rule of Evidence
404(b).  In issue three, appellant argues
the prejudicial effect of the evidence outweighed its probative value, and
admission of the evidence violated Texas Rule of Evidence 403.  We conclude admission of the evidence was
error under Texas Rule of Evidence 404(b), but the error was harmless.  Given our resolution of issues one and two,
we need not address issue three.

1. 
Legal Standard and Standard of Review

Rule 404(b) provides:

Evidence of other crimes, wrongs or acts is not
admissible to prove the character of a person in order to show action in
conformity therewith.  It may, however,
be admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident . . .
.

 








Tex. R. Evid. 404(b). 
Evidence is not admissible merely because it fits within one of the
purposes enumerated in Rule 404(b), for a purpose other than character
conformity.  Rankin v. State, 974
S.W.2d 707, 709 (Tex. Crim. App. 1996). 
Admissibility hinges on the relevancy of the evidence to a fact of
consequence in the case.  Id.  Extraneous
offense evidence is admissible if the proponent persuades the trial court the
extraneous evidence (1) tends to establish some elemental fact; (2) tends to
establish some evidentiary fact, such as motive, leading inferentially to an
elemental fact; or (3) rebuts a defensive theory.  See Santellan v.
State, 939 S.W.2d 155, 168B69 (Tex. Crim. App. 1997).  The proponent of the evidence must show that
evidence has relevance apart from showing character conformity.  See Rankin, 974 S.W.2d. at 718; Montgomery
v. State, 810 S.W.2d. 372, 387 (Tex. Crim. App. 1991).  Rule 404(b) incorporates the fundamental
tenet of our criminal justice system that an accused may be tried only for the
offense for which he is charged and not his criminal propensities.  Rankin, 974 S.W.2d at 718; see
Owens v. State, 827 S.W.2d 911, 914 (Tex. Crim. App. 1992).

We review the trial court=s admission of extraneous
offense evidence under an abuse of discretion standard.  Rankin, 974 S.W.2d at 718.  A trial court abuses its discretion when it
acts arbitrarily or unreasonably without reference to any guiding rules or
principles.  See Montgomery, 810
S.W.2d. at 380.

2.  Analysis

Admissibility
under Texas Rule of Evidence 404(b).  Over appellant=s
objection, the State offered S.D.=s
testimony in rebuttal for the purpose of showing appellant=s intent and motive.  The trial court admitted the evidence for
those purposes, and, in its final charge to the jury, instructed the jury it
could consider evidence of other offenses only “in determining the motive or
intent of the defendant, if any, in connection with the offense, if any,
alleged against him in the indictment and for no other purpose.”

On appeal, as he did in
the trial court, appellant argues the evidence was improperly admitted to prove
intent because intent was not a factual element in dispute.  We agree. 
The ultimate fact in dispute was whether appellant committed the act,
not whether it was performed with the requisite intent.  The intent could be clearly inferred from the
evidence presented by the State without the necessity of the use of an
extraneous offense.  See Prior v.
State, 647 S.W.2d 956, 957, 959 (Tex. Crim. App. 1983) (holding that intent
could be inferred from appellant=s
act when he “lifted up his bottom” from the car seat and exposed his penis,
which appeared to be erect and moved it back and forth with his hand).








In Rankin, the
Court articulated that, when the State=s
direct evidence clearly shows the intent element of the crime and that evidence
is not contradicted by the defendant nor undermined by cross-examination of the
state=s witnesses, the offer of
other crimes is unjustified because of the lack of relevance.  Rankin, 974 S.W.2d at 719.  In the present case, the jury heard testimony
from the three victims, describing and demonstrating the act they allegedly saw
appellant perform.  From that testimony
the jury could clearly infer the requisite intent of the offense.  The trial court abused its discretion by admitting
the extraneous evidence in order to prove intent[5].

The extraneous evidence
was also not admissible to prove motive. 
Motive is not an essential element of a criminal offense and need not be
proved to establish the commission of the offense.  Zulani v.
State, 903 S.W.2d 812, 826 (Tex. App.CAustin 1995, pet.
ref=d).  The State, nevertheless, suggests the
evidence was offered to rebut appellant=s
claim he was in the neighborhood looking for houses.  The relevance of S.D.=s evidence to this
theory, however, would require the jury to infer, because appellant had exposed
himself to S.D. when in her neighborhood, he therefore was in S.W.=s neighborhood to expose himself to young girls. 
Thus, the evidence would only show his action to be in conformity with
his character, which is exactly what Rule 404(b) prohibits.  See Rankin, 974 S.W.2d at 718.








On appeal, the State
argues the extraneous offense evidence was admissible to rebut various other
defensive theories.  Ordinarily, evidence
of extraneous offenses committed by the accused is admissible to refute
defensive theories raised by the accused. 
Wheeler v. State, 67 S.W.3d 879, 886 n.18 (Tex. Crim. App. 2002);
see also Albrecht v. State, 486 S.W.2d 97, 101 (Tex. Crim. App.
1972).  But admissibility for this
purpose is not without limits.  See Wheeler,
67 S.W.3d at 886B87
(holding extraneous offense witness=s
testimony not admissible to rebut defense expert=s
testimony defendant not type person to pose risk of abuse, but admissible to
rebut defensive theory of lack of opportunity). 
In addition, when a theory of admissibility is not presented to the jury
by means of a limiting instruction, an appellate court has no way to know
whether the jury properly applied the evidence consistent with that
theory.  See Owens, 827 S.W.2d at
917 (Tex. Crim. App. 1992).

The State first argues
the testimony of S.D. was admissible to rebut the false impression left by the
expert called by the defense.  The expert=s testimony implied
appellant was not the a type of person to commit such an act.[6]  When a witness presents a picture that a
defendant is not the type of person to commit the charged offense, the
prosecution may impeach that witness=s
testimony by cross-examination.  Wheeler,
67 S.W.3d at 885.  The State is allowed
full inquiry into the facts and data upon which the expert relied.  Id. 
The evidentiary caveat is that the opponent must correct the false
impression through cross-examination of the witness who left the false
impression, not by calling other witnesses to correct that false
impression.  Id.  Under Wheeler, the trial court could
not admit S.D.=s
testimony solely to rebut the expert witness called by appellant.[7]








The State also argues the
extraneous evidence was admissible to rebut the defensive theory of
mistake.  As an example of this defensive
theory, the State points to appellant=s
closing argument, in which appellant suggested one of the girls possibly saw a
reflection in the window of the defendant=s
truck and drew a mistaken conclusion based on a suspicion.  Appellant first introduced this theory in his
closing argument, so the extraneous offense evidence could not possibly have
been offered to rebut this defensive theory; the theory did not exist when the
State offered the evidence.  Furthermore,
to use the evidence to establish absence of mistake by the victims, the jury
would have to reason the victims were not mistaken because someone who exposed
himself previously was likely to have acted in conformity with his previous
behavior.  Once again, this would be an
improper purpose.  The evidence must be
relevant to some other purpose apart from showing character.  Rankin, 974 S.W.2d at 718.

Finally, the State argues
the evidence was admissible to rebut appellant=s
defensive theory of impossibility due to the height of appellant=s truck.  This defensive theory rested on appellant=s testimony about the
height of his truck and visibility from where the girls were standing and
testimony from appellant=s
father and sister who agreed the truck was too high for the girls to have seen
appellant=s
lap area.

The State=s rebuttal theory of
admissibility, however, was not presented to the jury in a limiting
instruction.  In Owens, the
intermediate court of appeals upheld the admissibility of extraneous offense
evidence on the ground it rebutted the defendant=s
“implied” theory of having been framed.  Owens
v. State, 795 S.W.2d 822, 824B25
(Tex. App.CTexarkana
1990), rev=d,
827 S.W.2d 911 (Tex. Crim. App. 1992). 
The court of criminal appeals reversed, criticizing the intermediate
court for upholding the admissibility of extraneous offense evidence on a
theory that was not presented to the jury in a limiting instruction.  827 S.W.2d at 917.  The court of criminal appeals stated that,
absent an additional limiting instruction, there was no way to know whether the
jury properly applied the extraneous evidence to rebut the weight and credibility
of the defendant=s
frame-up theory or whether the jury relied on it for an improper basis such as
character conformity.  Id.

In the present case, the
trial court did not include rebuttal of the impossibility defense in the
limiting instruction to the jury. 
Because the trial court did not do so, we cannot consider rebuttal of
the defensive theory of impossibility as a proper purpose to admit the
extraneous evidence.  See id.








The extraneous acts
evidence was inadmissible because the trial court failed to identify a
legitimate purpose for its admission under Rule 404(b).  Based on the foregoing analysis, we conclude
the trial court abused its discretion in admitting the evidence of appellant=s extraneous offense
under Rule 404(b).  Now, we must
determine whether admission of the evidence was harmful.

Harm analysis.  The erroneous admission of an extraneous
offense does not constitute constitutional error.  Peters v. State, 93 S.W.3d 347, 354
(Tex. App.CHouston
[14th Dist.] 2002, pet. ref=d).  Therefore, unless the error affected
appellant=s
substantial rights, we must disregard it. 
See Tex. R. App. P. 44.2(b).  An error affects a substantial right when the
error had a substantial and injurious effect or influence on the jury=s verdict.  King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997).  If the error had
no influence or only  a slight influence
on the verdict, it is harmless.  See
Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  However, if we harbor “grave doubts” the
error had a substantial influence, the conviction may not stand.  See United States v. Lane, 474 U.S.
438, 449, 106 S. Ct. 725, 732 (1986), cited in Webb v. State, 36
S.W.3d 164, 182 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref=d).  In assessing the likelihood that the error
adversely affected the jury=s
decision, we should consider everything in the record, including all testimony
and evidence admitted for the jury=s
consideration, the nature of the evidence supporting the verdict, the character
of the alleged error, and how the error might have been considered in connection
with other evidence in the case.  Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim App.
2002) (citing Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App.
2000)).  We may also consider the jury
instructions, the State=s
theory of the case, the defensive theories, closing arguments, and whether the
State emphasized the error.  See id.
at 355B56.








In the present case, it
is doubtful S.D.=s
testimony had more than a slight effect upon the jury=s decision.  We acknowledge there was substantial
similarity between the extraneous offense and the charged offenses.  See Webb, 36 S.W.3d at 183 (referring
to striking similarities between charged offense and extraneous offense).  Nevertheless, unlike Webb, this is not
a case in which the credibility of a single victim was set against the
credibility of the defendant.  Rather,
the jury heard testimony from three victims of the charged offenses.  The three victims provided consistent stories
about what transpired between them and appellant.  All victims of the charged offenses were able
to identify appellant, and he admitted to being there.  There was no suggestion the victims were
lying or had any motive to lie; nor was there any attack on their
credibility.  S.D.=s testimony did not
significantly bolster the State=s
case.

The State=s direct examination of
S.D. occupies less than ten pages of the reporter=s
record, compared to over 37 pages for S.W.=s
direct examination, 34 pages for A.G.=s,
and 24 for S.G.=s.  The State made only five brief references to
S.D.=s testimony in closing
arguments that covered twelve pages of the reporter=s record.

We do not believe S.D.=s testimony played a
significant role in appellant=s
conviction nor had a substantial and injurious effect or influence on the jury=s verdict.  See King, 953 S.W.2d at 271.  Therefore, we conclude the error was
harmless.

We overrule appellant=s issues one and
two.  Having concluded admission of the
evidence was harmless error, we need not address appellant=s issue three, in which
he challenges admissibility of the evidence under Texas Rule of Evidence 403.

C. 
Issues Four through Six:  S.D.=s Identification of
Appellant

In issue four, appellant argues the trial court erred in
denying his motion to suppress S.D.=s identification of appellant as the
person who indecently exposed himself to S.D. 
In issues five and six, respectively, he argues S.D.=s identification of him denied him
his right to due process under the federal constitution and his right to due
course of law under the state constitution. 
Appellant does not present a separate analysis under the state
constitution and does not argue the state constitution affords him more protection
than the federal constitution.  See
Black v. State, 26 S.W.3d 895, 896 n.4 (Tex. Crim. App. 2000) (declining to
address appellant=s state constitutional argument when appellant offered no
reason for construing Texas Constitution as conferring greater protection in
area of law at issue than the federal constitution).








In responding to appellant=s issues one through three, we held
evidence of the extraneous offense against S.D. was inadmissible under Texas
Rule of Evidence 404(b), but admission of the testimony was harmless under
Texas Rule of Appellate Procedure 44.2(b), dealing with nonconstitutional
error.  Appellant, however, argues the
rule 44.2(a) standard for constitutional error applies to analysis of his
identification issues.  We therefore
briefly address the identification issues and conclude that the factors
surrounding S.D.=s identification of appellant do not provide an independent
ground for excluding the evidence and therefore an additional harmless error
analysis is unnecessary.

Appellant complains the photographic display presented to
S.D. was impermissibly suggestive because appellant=s photo was the only one with closed
eyes and a smile.  He then argues the
impermissibly suggestive out-of-court procedure tainted S.D.=s in-court identification.  “An in‑court identification is
inadmissible when it has been tainted by an impermissibly suggestive pretrial
photographic identification.  The test is
whether, considering the totality of the circumstances, ‘the photographic
identification procedure was so impermissibly suggestive as to give rise to a
very substantial likelihood of irreparable misidentification.’”  Loserth
v. State, 963 S.W.2d 770, 771B72 (Tex. Crim. App. 1998) (quoting Simmons
v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968)).








Even were we to assume appellant=s facial expression rendered the
display impermissibly suggestive, the totality of the circumstances in the
present case does not give rise to a very substantial likelihood of irreparable
misidentification.[8]  The relevant circumstances are (1) S.D.=s opportunity to view appellant at
the time of the offense; (2) S.D.=s degree of attention; (3) the
accuracy of S.D.=s prior description, if any, of appellant; (4) the level of
S.D.=s certainty demonstrated in selecting
appellant=s photograph; and (5) the length of
time between the offense and S.D.=s being shown the photographic
display.  See Loserth,
963 S.W.2d at 772 (citing Neil v. Biggers, 409
U.S. 188, 199, 93 S. Ct. 375, 382 (1972)).

Four of the five factors weigh in favor of admissibility.[9]  Regarding her opportunity to view appellant,
S.D. testified she first saw appellant while she was rollerblading to her
friend=s house in the afternoon on February
21, 2001.  It was light outside when she
saw a black truck pulled up next to her at a stop sign.  Regarding her degree of attention, S.D. testified
she got a good look at the man driving the truck, and, on cross examination at
trial, she described what he was wearing that day.  She was on the sidewalk when the truck
stopped, and she saw a man in the truck with his hand on his genitals moving
his hand up and down.  She later
identified appellant in a photo spread as the man she saw that day.  Regarding her level of certainty, S.D.
testified she was sure the photo she picked was the  man in the truck because she remembered him,
not because the man in the photo was smiling or had his eyes closed.[10]  Finally, regarding the length of time between
the incident and her identification, S.D. testified the photo spread was
presented to her approximately a month 
and a half after she witnessed the incident.








All factors indicate a high degree of reliability of the
identification made by S.D.  The only
factor we are unable to examine is the accuracy of a prior description given by
S.D.  S.D. did not give the police a
description of the man she saw on February 21, 2001.  She described only the truck she saw.[11]

Concluding the totality of the circumstances in the present
case did not give rise to a very substantial likelihood of irreparable
misidentification, we overrule appellant=s issues four through six.

D.  Issues Seven through Nine: Lack
of Instructions regarding Probation[12]

In issue seven, appellant
contends the trial court erred when it did not supplement the jury charge in
response to the jury=s
question about residence restrictions associated with a probated sentence.  In issues eight and nine, respectively,
appellant argues the trial court=s
refusal to include applicable conditions of probation (community supervision)
in the charge denied him his right to due process under the federal
constitution and his right to due course of law and a fair trial under the
state constitution.[13]








The matter of probation
conditions arose initially during voir dire when the trial court, the Honorable
Joan Huffman, presiding, was explaining how the jury would be assessing
punishment.  At that point Judge Huffman
stated, “What will happen in the law that I give you, I=ll
give you a little bit of basic information about conditions of probation that
could be assessed if a Defendant were to receive probation . . . .  So, you’ll get a little bit of information
about what probation would mean, you=ll get a little bit of information about
what a prison sentence would mean.”

During the punishment
phase, Harris County Probation Officer Glenn Loethen testified for the
defense.  Among other things, he
explained the mandatory registration process for sex offenders on
probation.  He also read the condition
describing the “child safety zone,” under which a probationer is not to go
within 100 yards of premises where children commonly gather and is not to
supervise, or participate in, programs involving persons under
17 years of age.

Immediately before
closing arguments at the punishment phase, the following interaction occurred
between defense counsel and the trial court, the Honorable Robert D. Jones,
presiding:

THE COURT:  All right.  Do you have any objection to the charge?

MS. WEBB [defense counsel]: 
I do, Your Honor. 

Judge, with regard
to the charge -- all three charges are the same, Your Honor.  But on page 2, it gives general conditions of
probation.  It lists them.  I would like, in addition to those, those
included under several different sections under the B

THE COURT:  First place, the Court is not required to
give any of these conditions.  If you
want me to take them all out, I=ll take them all
out.  I=m not going down
and go -- what=s going to happen, because I don=t know.

So, do you want me to take them out; or do you want to add
some?

MS.
WEBB:    I would like to add some.

THE COURT:  I=ll take them all
out.

MS.
WEBB:    May I read them for the record, what I=m requesting?

THE COURT:  You may.

MS. WEBB:  The Defense proposes on page 2 to add No. 10,
which is prescribed under Section 6202(a). 
And that is that a person who has a reportable conviction, which a
conviction of an offense of indecency with a child is, is required to register
as a sex offender as a condition of parole, release of mandatory supervision or
community supervision; that the Defendant shall register with the applicable
law enforcement agency.








My second request,
and I would request that it be Request No. 11, is under Section 4212, Section
13(b), that addresses when Defendants are placed on community supervision for
sexual offenses against children; that if placed on community supervision for a
sexual offense, that the Judge shall -- it=s not permissible
-- shall -- I mean, not negotiable -- shall establish a child safety zone
applicable to the Defendant by requiring as a condition of community
supervision that the Defendant did not, A, supervise or participate in any
program; that includes as participants or recipients, persons who are 17 years
of age or younger, and that regularly provides athletic, civic, or cultural
activities; or, B, go in, on or within a distance specified by the Judge of a
premises where children commonly gather, including a school, a daycare
facility, playground, public or private youth center, public swimming pool or
video arcade facility; and attend psychological counseling sessions for sex
offenders with an individual or organization which provides sex offender
treatment or counseling as specified by or approved by the Judge or the
Community Supervision and Corrections Department officer supervising the
Defendant.

That would be my
request for section -- additional No. 11, Judge.

For No. 12, the
Defense requests, under 4212, Section 14, that if a person receives probation
and is convicted of an offense, of which indecency with a child is included,
that the Court may require as a condition of probation that the Defendant not
directly communicate with the victim of the offense or go near a residence,
school, or other location, as specifically described in the copy of the terms
and conditions, frequented by the victim.

From that -- from
Section 14, Subsection B.  The Court may
require the probationer to attend psychological counseling sessions at the
direction of the probation officer and may require the probationer to pay all
or part of the reasonable fees and necessary costs incurred by the victim for
psychological counseling made necessary by the offense upon the finding that
the probationer is financially able to make the payment.  Any payments ordered by this subsection may
not extend past one year from the date of the order.

And those -- that
concludes, Judge, my request to be included on page 2.

THE COURT:  That will be denied.

All conditions will be taken out.

Anything else?

MS. WEBB:  No, Your Honor.

You=re punishing me for asking for the rest?








THE COURT:  Excuse me?

MS. WEBB:  You=re punishing me --
I mean, my client for asking for the additional conditions.

THE COURT:  Counsel, I=ve ruled.  Don=t argue with the Court. 
The Court has ruled.  As you may
well know, the law is I am not required to give the conditions of probation.

MS. WEBB:  Then may I have a corrected copy of the
charge, Judge, so that I can review it?

THE COURT:  Yes, ma=am.  I=m sorry.  Certainly after we get a new charge, you=ll have an
opportunity to review it.

Court will take a short recess.

                                                     (Recess
taken.)

THE COURT:  We now have a new charge.

State have any objections?

MR. LARSON
[prosecutor]:  No, Your
Honor.

THE COURT:  What about the Defense?

MS. WEBB:  Only other thing is we would like the
community supervision conditions that were included in the first set of charges
that we got.

THE COURT:  And do you have any authority that requires
the Court to give such instructions?

MS. WEBB:  I don=t, Judge, but you
eradicated it without an objection from the State.

So, for the
purposes of the record, may I introduce the first version of the charge we saw
as 8-A 1,2, and 3, just for the record, Judge.

THE COURT:  Thank you.  Your objection will be overruled.

 








The trial court then
called the jury back to the courtroom and read the punishment phase
charge.  The charge indicated the jury
could recommend community supervision if the punishment it assessed did not
exceed ten years.  The charge also
defined community supervision as “the placement of a defendant by a court under
a continuum of programs and sanctions, with conditions imposed by the Court for
a specified period during which a sentence of imprisonment or confinement,
imprisonment and fine, or confinement and fine, is probated and the imposition
of sentence is suspended in whole or in part.” 
Finally the charge indicated if the jury recommended probation, it “shall
be granted by the Court.” During deliberations, the jury sent out a note
stating, “We request information on residence restriction associated
w/probation sentence,” to which the trial court responded, “Read the charge.”

A trial court is not
required to submit the statutory terms of probation in the jury charge on
punishment.  See Cortez v. State,
955 S.W.2d 382, 384 (Tex. App.CSan
Antonio 1997, no pet.); McNamara v. State, 900 S.W.2d 466, 467B68 (Tex. App.CFort Worth 1995, no
pet.); see also Yarbrough v. State, 779 S.W.2d 844, 845 (Tex.
Crim. App.1989) (per curiam) (dismissing petition as improvidently granted and
expressly overruling Brass v. State, 643 S.W.2d 443 (Tex. App.CHouston [14th Dist.]
1982, pet. ref=d),
which had required inclusion of probation terms in the jury charge).  It was not error for the trial court to
refuse to do so in the initial charge to the jury.  See McNamara, 900 S.W.2d at 468.

Appellant, however,
points to the jury=s
question and argues the trial court erred when it did not supplement the charge
at that point.  In support, he cites Herrera
v. State, 848 S.W.2d 244 (Tex. App.CSan
Antonio 1993, no pet.).  In Herrera,
the initial charge did not provide a definition of probation and did not list
any possible probationary conditions.  Id.
at 247.  During deliberations, the jury
sent a note to the trial court asking, “Judge, What exactly is the meaning of
probation?  What happens to someone who
is placed on probation?”  Id.  The trial court responded in writing, “You
have all the law the Court can give you. 
Please continue your deliberations.” 
Id.  The defendant objected
to the trial court=s
response.  Id. at 248.

With virtually no
analysis, the court of appeals concluded the trial court erred.  Id. at 247.  Given the defendant=s objection in the trial
court, the court of appeals applied a harm analysis which required reversal in
the presence of any harm.  Id.
at 248 (citing Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App.
1986); Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1984)).  The court concluded:








The jury was given
the option of granting probation.  The
jury, however, was denied instruction regarding probation when it requested
such instruction.  Therefore, the jury
was not equipped with all the information it needed to properly consider her
application for probation.  The jury
denied probation and sentenced the defendant to jail.  Some harm resulted when the court refused to
supplement the punishment jury charge with a definition of probation.

We emphasize that
the omission of either a definition of probation or conditions of probation from
the jury charge is not fundamental error. 
See Yarbrough v. State, 742 S.W.2d 62 (Tex. App.CDallas 1987), review
dismissed, 779 S.W.2d 844, 845 (Tex. Crim. App. 1989); Henderson v.
State, 617 S.W.2d 697, 700 (Tex. Crim. App. 1981).  However, after the jury asked in essence, “What
is probation?” it was error for the trial judge not to supplement the charge
with instruction regarding probation when the charge was devoid of any such
instruction.  At minimum, the court
should have given the jury the statutory definition of probation found at Tex. Code Crim. Proc. Ann. art. 42.12, ' 2(2) (Vernon
Supp. 1993).  Alternatively, the court
could have enumerated the possible probationary terms and conditions.

 

Id.

San Antonio is the only
court to cite Herrera in a published opinion.  See Cortez, 955 S.W.2d at 384.  No court has relied on Herrera to
reverse, and we decline to do so here for at least three reasons.

First, Herrera
arguably conflicts with Yarbrough to the extent Yarbrough
indicates there is no requirement to include conditions of probation in the
charge.  See Yarbrough, 779 S.W.2d
at 845.

Second, unlike the
situation in Herrera, there is nothing in the record in the present case
to indicate appellant objected to the court=s
response to the jury=s
question.  See Talley v. State,
909 S.W.2d 233, 235 (Tex. App.CTexarkana,
1995, pet. ref=d)
(holding claim of error in trial court=s
response to jury=s
question not preserved when defendant did not object to response).








Third, even if appellant=s objection to the
initial charge somehow preserved his claim of error in the trial court=s subsequent response to
the jury=s question, appellant has
not shown harm in the present case. 
Unlike Herrera, the jury in the present case received a definition
of “community supervision.”  In addition,
Officer Loethen testified for the defense in the punishment phase, explaining
the mandatory registration process for sex offenders on probation and reading
the condition of probation describing the “child safety zone.”

We overrule issues seven
through nine.

We affirm the judgment of
the trial court.

 

 

/s/        John
S. Anderson

Justice

 

 

 

 

Judgment rendered and Opinion filed May 29, 2003.

Panel consists of Justices Anderson, Seymore, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).

 











[1]  S.W. and A.G.
testified they saw him pull in and out of driveways.  S.G. testified he drove down the street, but
did not testify he pulled into any driveways. 
Appellant admitted in his testimony to pulling into one driveway to turn
around.





[2]  Montgomery,
however, did not think appellant was driving in an evasive manner.  Montgomery testified he thought the truck was
traveling at a normal rate of speed or slower.





[3]  Additionally,
appellant’s ex-wife and sister testified he never wears shorts.





[4]  S.D.’s description of the truck was slightly inconsistent
with the description Huetwohl and Montgomery gave of appellant=s truck.  S.D.
testified she remembered the truck was black, with the word “Sport” written on
it, and it had a red stripe.  Huetwohl
and Montgomery testified appellant’s truck was black, with the word “Edge”
written on it in red.





[5]  Because we
have concluded intent was not a disputed element, which extraneous evidence
would be admissible to prove, the State’s argument regarding the doctrine of
chances, which also relates to the element of intent, fails.





[6]  The expert
testified the defendant=s lifestyle was inconsistent with the lifestyle of an
exhibitionist.  He also testified the
actions described by the victims were inconsistent with actions of an
exhibitionist.





[7]  But see
Creekmore v. State, 860 S.W.2d 880, 883B84 (Tex. App.CSan
Antonio 1993, pet. ref’d) (upholding admission of third-party extraneous
offense evidence after defendant’s expert testified defendant did not fit
profile of an abuser and stated defendant told her he had never sexually
molested anyone); Townsend v. State, 776 S.W.2d 316, 318 (Tex. App.CHouston [1st Dist.] 1989, pet. ref=d) (concluding defendant, through his own testimony
and that of expert, “opened door” to admission of third-party extraneous
offense evidence in rebuttal).  The Wheeler
court cited Townsend without disapproving of the holding.  See Wheeler
v. State, 67 S.W.3d 879, 885 n.12 (Tex. Crim. App.
2002).





[8]  At least two
federal circuit courts have held that a photographic display was not
impermissibly suggestive despite the fact the defendant=s photograph was the only one with the subject=s eyes closed.  See
United States v. Burdeau, 168 F.3d 352, 357B58 (9th Cir. 1999) (holding array with defendant=s photograph in center of array, darker than others,
and showing subject with eyes closed not impermissibly suggestive); United
States v. Sanchez, 24 F.3d 1259, 1261, 1263 (10th Cir. 1994) (holding
photographic array not impermissibly suggestive despite several irregularities
including fact appellant was only person with eyes closed).





[9]  Without
objection from the defense, the State during S.D.’s
trial testimony, raised the issue of  S.D.’s selection of appellant’s photograph from the array,
and we have reviewed S.D.’s trial testimony as well
as that elicited during the hearing on the admissibility of the evidence.  See Webb v. State, 760 S.W.2d 263, 272
& n.13 (Tex. Crim. App. 1988) (reviewing evidence presented both at
pretrial hearing and adduced at trial, to determine whether trial court abused
its discretion permitting in-court identification, after pretrial
identification procedure was challenged as unnecessarily suggestive and
conducive to mistaken identification).





[10]  See Stevens
v. Maloney, 32 F. Supp.2d 478, 482 (D. Mass 1998) (stating witness’s
testimony she was not relying on distinctive feature considerably neutralizes
suggestiveness of display).





[11]  S.D. described
the truck as a black truck with a small red line and the word “Sport” written
on it.  This description is not an exact
match to the appellant=s truck. 
However, it is not completely inconsistent either.





[12]  The terms “community
supervision” and “probation” share the same meaning and are generally  used interchangeably.  Prevato
v. State, 77 S.W.3d 317, 317 n.1 (Tex. App.CHouston
[14th Dist.] 2002, no pet.).





[13]  As was the
case with issues four through six, appellant does not present a separate
analysis under the state constitution and does not argue the state constitution
affords him more protection than the federal constitution.  See Black v. State, 26 S.W.3d 895, 896
n.4 (Tex. Crim. App. 2000) (declining to address appellant=s state constitutional argument when offered no reason
for construing Texas Constitution as conferring greater protection in area of
law at issue than the federal constitution).