Raymond OWENS, Appellant,

v.

The STATE of Texas, Appellee.

No. 1039–90.

Court of Criminal Appeals of Texas, En Banc.

March 4, 1992.

Rehearing Denied April 15, 1992.

912

James R. Rodgers and Judy R. Hodgkiss, Paris, for appellant.

Frank Long, Dist. Atty., Robert E. Newsom, Asst. Dist. Atty., Sulphur Springs, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant, Raymond Owens, was tried and convicted for aggravated sexual assault of a child. See Tex. Penal Code § 22.-021(a)(1)(B)(i). The jury assessed punishment at fifteen years imprisonment. The Texarkana Court of Appeals affirmed the conviction in a published opinion. *Owens v. State*, 795 S.W.2d 822 (Tex.App.—Texarkana 1990). We granted appellant's petition for discretionary review, pursuant to Tex.R.App.Proc. 200(c)(3), in order to determine whether the court of appeals erred in its holding that the trial judge committed no reversible error by admitting, at the guilt-innocence stage of appellant's trial, evidence of an unadjudicated extraneous offense demonstrating appellant's "system" of criminal conduct.[1] We will reverse.

At appellant's trial, the State produced evidence that during August 1987, appellant sexually molested B___ O___, his eleven-year-old daughter, by fondling her breast and penetrating her vagina with his finger. On October 15, 1988, B___ O___ discussed the incident with her uncle, Glen Owens. B___ O___ testified that she delayed informing anyone of the incident because of her father's threat that "he would beat me to death before anyone could do anything about it." B___ O___ also stated that appellant committed no subsequent acts of molestation against her. On cross-examination, B___ O___ disclosed that throughout the time surrounding the alleged incident of molestation she was dissatisfied at home and felt that her parents were overly strict. She also testified that as she grew older she spent an ever-increasing amount of time at Glen Owens' home, where she was happier than with her parents. B___ O___ stated that Glen Owens was less strict and had more material things to offer her than did her parents.

Appellant took the stand in his own defense, denying the occurrence of the alleged assault. During his testimony, appellant echoed B___ O___'s earlier statements regarding her general dissatisfaction at living with appellant and his wife. Appellant stated further that because B___ O___ was displeased with the material things appellant and his wife were able to give her, B___ O___ had developed a close relationship with Glen Owens, who provided her with a more amenable lifestyle.

As a rebuttal witness, the State produced appellant's eldest daughter J___ F___, whom the trial judge allowed the jury to hear over appellant's timely and proper objection. At the conclusion of the trial, the trial judge instructed the jury that it was only to consider the testimony of J___ F___ for the limited purpose of "determining the system of the Defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose." J___ F___ testified that she too had been sexually molested by her father when she was approximately eleven years old, including two occasions of sexual intercourse. J___ F___ testified that these acts of molestation included appellant putting his hand down her blouse and pants. The testimony of J___ F___ revealed that the alleged extraneous assault on her occurred approximately five years before the charged crime took place and seven years before trial.

---

1. Appellant's petition for discretionary review was granted on the following three grounds:
   1. The Court of Appeals erred in holding that evidence of an extraneous offense was admissible to rebut a defensive theory that petitioner was framed.
   2. The Court of Appeals erred in holding that the evidence of extraneous offenses was not so remote as to be inadmissible.

   3. The Trial Court erred in admitting evidence of the extraneous offense as the prejudicial effect of such evidence clearly outweighed its probative value.

   Because we will reverse on appellant's first ground for review, we need not discuss his remaining grounds.

Appellant returned to the witness stand, denying the allegations of his oldest daughter and testifying that J___ F___ accused him of sexual abuse only after he confronted her on the street, after seeing her violating one of the family's rules requiring her to remain on school premises. Appellant also testified that on the evening of this confrontation with J___ F___ he discussed the issue with his wife and then offered the telephone to J___ F___ so she could call the sheriff and turn him in. According to appellant, his daughter declined, and no charges or reports were ever made concerning this incident.

On direct appeal, the Texarkana Court of Appeals held that the testimony of J___ F___ was properly admitted under Tex.R.Crim.Evid. 404(b)[2] for the purpose of rebutting appellant's implicit defensive "frame-up" theory. The appellate court did not address the trial court's theory of admissibility or the fact that the jury had been given a limiting instruction[3] confining their consideration of the extraneous offense evidence to appellant's "system." The court of appeals reasoned that the trial testimony regarding B___ O___'s dissatisfaction at the living conditions at appellant's home, coupled with testimony that Glen Owens was capable of providing B___ O___ with more material benefits, "implicitly raised" the defensive theory that B___ O___ was trying to frame appellant. The court of appeals noted that this testimony "left the impression with the jury that B___ O___ had a motive in framing [appellant]."

In his ground for review number one, appellant argues that the trial court erred in admitting the testimony of J___ F___, as this testimony tended only to show appellant's tendency to be a sexual deviant.

Appellant further asserts that this extraneous offense evidence was improperly admitted, as it did not establish a "system" of appellant. Appellant also denies the existence of any "frame-up" defense. Without addressing appellant's arguments regarding the trial judge's "system" theory of admissibility, the State responds that the evidence was properly admitted to rebut the defensive theory of "frame-up."

We turn now to the merits of appellant's ground for review. It is a fundamental tenet of our system of jurisprudence that an accused must only be tried for the offense of which he is charged and not for being a criminal in general. See, e.g., *Templin v. State*, 711 S.W.2d 30 (Tex.Cr. App.1986); *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972). Because extraneous offense evidence carries with it the inherent risk that a defendant may be convicted because of his propensity for committing crimes generally—i.e., his bad character—rather than for the commission of the charged offense, courts have historically been reluctant to allow evidence of an individual's prior bad acts or extraneous offenses. Under Tex.R.Crim.Evid. 404(b) extraneous offense evidence may be admissible only if it tends to prove a material fact in the State's case, apart from its tendency to demonstrate an accused's general propensity for committing criminal acts.

▪ In the instant case, the extraneous offense evidence was admitted on the theory that it tended to prove the criminal "system" of appellant. In the context of extraneous offenses, the term "system" can be used synonymously with the terms "modus operandi" or "methodology" to refer to a defendant's distinctive and idiosyncratic manner of committing criminal acts.[4] See, e.g., *Rogers v. State*, 598 S.W.2d 258,

---

**2.** Tex.R.Crim.Evid. 404(b) provides, in relevant part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive,

opportunity, intent, preparation, knowledge, identity, or absence of mistake or accident....

**3.** See p. 2, ante.

**4.** Because the record is utterly devoid of any definition or other indication of what the trial court meant by its use of the term "system", we note the possibility that the court might have

261 (Tex.Cr.App.1980); *Garcia v. State,* 455 S.W.2d 271, 272 (Tex.Cr.App.1970); *Jones v. State,* 716 S.W.2d 142, 160–61 (Tex.App.—Austin 1986). Evidence of a defendant's particular modus operandi is a recognized exception to the general rule precluding extraneous offense evidence, if the modus operandi evidence tends to prove a material fact at issue, other than propensity.

■ The facts of this case present us with two separate issues regarding the trial court's "system" theory of admissibility: (1) whether the State presented sufficient evidence to establish a "system" of appellant; and (2) whether proof of appellant's "system" was relevant to a material fact in the instant case.

■ We question, initially, whether the facts of this case adequately demonstrate any type of criminal "system" at all as that term is properly applied to extraneous offense cases. When the State seeks to admit extraneous offense evidence under a theory of "system" or modus operandi, "there must be a showing that the extraneous offense which was committed by the defendant was 'so nearly identical in method [to the charged offense] as to earmark them as the handiwork of the accused.' " *Collazo v. State,* 623 S.W.2d 647, 648 (Tex. Cr.App.1981), quoting E. Cleary, *McCormick's Handbook of the Law of Evidence* 449 (2d ed. 1972). The State must show more than the mere repeated commission of crimes of the same type or class: " 'The device used must be so unusual and distinctive as to be like a signature,' " Id. "If there is no sufficiently distinctive characteristic, then the relevancy of the evidence cannot outweigh its prejudicial value." *Collazo* at 648.

In our view, the similarities of the extraneous offense and the charged offense in the case at bar are not so unusual or idiosyncratic as to signal conclusively that the two offenses were the handiwork of the same individual. Certainly, the two offenses are alike in that they were both sexual assaults committed against minor females, of approximately the same age at the time of the alleged offenses, both of whom were appellant's daughter. However, no evidence was revealed at trial concerning any particularized details or unique qualities of the two acts other than these general similarities. These offenses were not so compellingly similar that an objective trier of fact could, upon examining only the similarities of the two offenses, conclude with any certitude that they were so alike as to identify both crimes as the work of the same person. Appellant's alleged acts of placing his hands down the garments of both daughters were not so unusual or distinctive that they would necessarily mark appellant as the culprit, as such acts occur in many cases of molestation.

We also note several important dissimilarities between the two alleged offenses. For example, the alleged sexual assaults on J___ F___ continued for a period of approximately two years and included acts of sexual intercourse, whereas the assaultive behavior against B___ O___ consisted of only one isolated incident of illegal touching and penetration with appellant's finger.

To hold that these two alleged sexual assaults were so nearly identical in method as to constitute a "system" would run the risk of qualifying almost any two crimes of the same class and against the same type of victim as a "system":

> We recognize that there will always be similarities in the commission of the same type of crime. That is, any case of robbery by firearms is quite likely to have been committed in much the same way as any other. What must be shown to make the evidence of the extraneous

meant to use "system" in the context of a "common plan or design ... one continuous transaction or system" of appellant. *Boutwell v. State,* 719 S.W.2d 164, 180 (Tex.Cr.App.1985) (op. on

reh'g). If so, the admission of such evidence on the facts of this case would clearly constitute error under our analysis in *Boutwell.* Id.

offense admissible is something that sets it apart from its class or type of crime in general, and marks it distinctively in the same manner as the principal crime.

*Ford v. State,* 484 S.W.2d 727, 730 (Tex.Cr. App.1972). Such a result is forbidden under our laws, as it does nothing more than show, in violation of Rule 404, that the defendant has a propensity for being a "child molester" or a "sexual deviant."

> To say that two sexual assaults are similar because they are both acts of sadistic sexual deviations is not to point to a device that is so unusual and distinctive as to be like a signature. Almost any two sexual assaults could be characterized as sadistic acts, just as almost any two murders could be characterized as violent acts. This is nothing more than dressing in psychological garb the very thing that the law on evidence of extraneous offenses forbids: proof of the repeated commission of a class of offenses to demonstrate that the defendant is a criminal (or sexual deviant) generally.

*Collazo,* supra at 649 (holding that trial court erred in admitting extraneous offense when only similarities were that the two assaults were on adult women, in public places, as they returned to their automobiles); see also, *Messenger v. State,* 638 S.W.2d 883 (Tex.Cr.App.1982).

■ Even assuming that the evidence was sufficient to establish appellant's "system" of criminal activity, we find that such evidence was not relevant to any material fact in dispute. Clearly, extraneous offense evidence demonstrating a unique system may be admitted when the material fact at issue is the defendant's identity. See *Boutwell v. State,* 719 S.W.2d 164, 180 (Tex.Cr.App.1985) (op. on reh'g) ("We are not here concerned with the modus operandi or 'signature' exception *used to prove identity*"); *Collazo,* supra at 648.

In the case at bar, however, we fail to discern how the evidence of defendant's "system" has any relevance, beyond propensity, when there was no contested issue of identity or any of the other grounds for admission listed in Rule 404(b). In discussing the improper admission of extraneous offense evidence on a "pattern" (i.e., "system") theory, Judge Easterbrook, writing for the Seventh Circuit, cautioned:

> The inference from "pattern" by itself is *exactly* the forbidden inference that one who violated the [laws] on one occasion must have violated them on the occasion charged in the incident. Unless something more than pattern and temporal proximity is required, the fundamental rule is gone. That is why "pattern" is not listed in Rule 404(b) as an exception. Patterns of acts may show identity, intent, plan, absence of mistake, or one of the other listed grounds, but a pattern is not itself a reason to admit the evidence.

*United States v. Beasley,* 809 F.2d 1273, 1278 (7th Cir.1987) (emphasis in original); see also, *United States v. Gruttadauro,* 818 F.2d 1323, 1328 (7th Cir.1987).

Because of the trial court's instruction to the jury, we cannot discern exactly what—if any—material fact in issue this extraneous offense was offered to either prove or rebut. It is evident to this Court that given the facts of this case the only ultimate fact to be resolved by the jury was whether the criminal offense occurred, as alleged by B___ O___. There was no dispute about identity, motive, intent, or any of the other exceptions listed in Rule 404(b).

■ In resolving the question of appellant's commission of the charged offense, the jury had the testimony of both appellant and the complainant, B___ O___. They were the sole arbiters of the credibility of these two witnesses. And because the occurrence of the offense was the only ultimate fact in dispute, any theory of admissibility must naturally stand or fall on whether it legitimately assisted the jury in determining that fact. We fail to see how evidence of appellant's "system" could assist the jury in its determination of whether or not appellant molested his daughter,

except that it tends to show character conformity in violation of Rule 404.[5]

In short, because the trial court failed to identify any legitimate Rule 404(b) or common-law basis of admissibility on which evidence of appellant's alleged "system" could have been offered, and because our independent review of the record reveals none, we find that the trial court erred in admitting such testimony.[6]

■ The court of appeals, however, held that the extraneous offense evidence was admissible to rebut appellant's "implied" theory of "frame-up." This holding is flawed. As previously discussed, extraneous offense evidence of a defendant's system is admissible only as proof of some other proper basis of admissibility. In other words, in a proper factual context, evidence of a defendant's system could be used to show, inter alia, identity or lack of mistake. But even assuming (1) a defensive theory of "frame-up" was actually raised at trial, and (2) evidence of appellant's "system" could have been offered to rebut that theory, this "frame-up" theory was not presented to the jury in the trial court's limiting instruction. Absent such additional instruction, there is no way for an appellate court to know whether the jury properly applied the evidence of appellant's "system" to rebut the weight or credibility of appellant's "frame-up" theory or relied on it for an improper basis such as character conformity.

Based on the foregoing analysis, we find that the trial court clearly abused its discretion in admitting evidence of appellant's extraneous offense, because the trial court's "system" theory of admissibility, as expressed in the limiting instruction given to the jury, was wholly inappropriate to the facts of this case. We likewise reject the court of appeals' misplaced reliance on the "implied" theory of "frame-up" as a basis for admissibility of the extraneous offense testimony of J____ F____.

■ Having found error in the admission of extraneous offense evidence, we reverse the judgment of the court of appeals and remand this case to that court for a determination of whether the error was harmless under Rule 81(b)(2) of the Texas Rules of Appellate Procedure.[7]

---

5. Admittedly, evidence of appellant's alleged "system" might have had some logical relevance to the jury's overall assessment of the veracity of the testimony of B____ O____ and appellant. However, we have previously held that, "an issue regarding the general credibility of a witness in a criminal trial is not a material issue in the sense that it will justify the admission of inherently prejudicial evidence of details of an extraneous offense committed by the witness." *Murphy v. State*, 587 S.W.2d 718, 722 (Tex.Cr.App.1979). We believe this to be equally true in the instant case, and observe that the extraneous offense evidence was not admissible if offered merely to bolster the testimony of his daughter B____ O____.

For clarity's sake we also point out the obvious: even if it is otherwise logically relevant, extraneous offense evidence regarding a defendant's sexual misconduct against a third party is wholly inadmissible if offered merely to show appellant's proclivity for molesting children. See *Boutwell v. State*, 719 S.W.2d 164 (Tex.Cr.App.1985) (op. on reh'g) (improper to admit extraneous offense on theory that it tended to show "'the probability of the act charged and the unnatural attention' of the defendant toward the complainant").

6. As stated, evidence of system, alone, is an insufficient basis for admissibility.

7. In a concurring and dissenting opinion it is argued that it is not "efficient" for this Court to remand this case to the court of appeals for a harmless error analysis under Tex.R.App.Pro. 81(b)(2): "the more appropriate disposition would be for this Court to make such a [harm] determination now while the case is before us rather than keeping it in 'appellate orbit' by remanding it back to the court of appeals." As authority for this assertion, the concurring and dissenting opinion relies on the plurality opinion in *Miller v. State*, 815 S.W.2d 582, 586 (Tex. Cr.App.1991).

This argument fails, however, because it misconstrues the distinction between an admirable concern for judicial economy and the need for this Court to refrain from exercising its jurisdiction inappropriately. This is not a case of adjudicative slothfulness designed to launch appellant's case into "appellate orbit"; rather, our disposition of this case is a purposeful abstention in light of our constitutional mandate.

In 1981, the people of Texas, via constitutional amendment, effected a marked and significant change in appellate criminal jurisdiction.

McCORMICK, P.J., and WHITE, J., concur in the result.

BAIRD, J., dissents.

OVERSTREET, Judge, concurring in part and dissenting in part.

I agree with the majority opinion's conclusion that the admission of the extraneous offense evidence was error. However, I strongly disagree with its decision to remand the case to the court of appeals for a determination of whether the error was harmless pursuant to Rule 81(b)(2). I believe that the more appropriate disposition would be for this Court to make such a determination now while the case is before us rather than keeping it in "appellate orbit" by remanding it back to the court of appeals. *See Miller v. State*, 815 S.W.2d 582, 586 (Tex.Cr.App.1991).

This is not a novel or radical idea, as no less than the Honorable Former Presiding Judge Onion has long advocated such an approach.[1] *See Zani v. State*, 758 S.W.2d 233, 248 (Tex.Cr.App.1988) (Onion, P.J., dissenting), *aff'd*, 767 S.W.2d 825 (Tex.App.—Texarkana 1989, pet. ref'd); *Jones v. State*, 720 S.W.2d 535, 536 (Tex.Cr.App.1986) (Onion, P.J., dissenting), *rev'd*, 726 S.W.2d 246 (Tex.App.—El Paso 1987, pet. ref'd); and *Woodfox v. State*, 742 S.W.2d 408, 411 (Tex.Cr.App.1987) (Onion, P.J., dissenting), *rev'd*, 754 S.W.2d 763 (Tex.App.—Houston [14th Dist.] 1988), *pet. dism'd*, 779 S.W.2d 434 (Tex.Cr.App.1989); *Black v. State*, 723 S.W.2d 674, 676 (Tex.Cr.App.1986) (Onion, P.J., dissenting), *aff'd*, 739 S.W.2d 638

(Tex.App.—Dallas 1987, no pet.). Other members of the present Court have also recently opined that "justice would be better served if we conducted [a harm analysis] instead of remanding" to the court of appeals and that failing to do so "would result in even greater appellate delay when such can be prevented by this Court at this time." *See Abdnor v. State*, 808 S.W.2d 476, 478 (Tex.Cr.App.1991) (Baird, J. joined by Miller, J., concurring and dissenting in part). I also observe that a majority of this Court was recently criticized for *failing* to remand a case to the court of appeals for reconsideration in light of subsequent precedent. See *Gonzales v. State*, 818 S.W.2d 756, 770 (Tex.Cr.App.1991) (Baird, J., dissenting). I merely echo the opinions expressed previously by my brethren.

The record reflects that the instant offense was alleged to have occurred on or about August 1, 1987, while the sentence was imposed on November 29, 1989. It would be much more efficient for this Court to make a final disposition and determine the issue now rather than in the distant future as we will assuredly be called upon to do by one of the parties after the court of appeals makes its decision. Because the majority does not do so, I can only concur with its conclusion with respect to the introduction of extraneous offense evidence being inadmissible, but I must dissent to its decision to remand to the court of appeals for a harm analysis.

---

See Tex. Const. Art. 5, §§ 5 & 6. As the Constitution and our rules of procedure make evident, the courts of appeals are vested with original appellate jurisdiction in noncapital criminal cases, whereas this Court is relegated solely to the discretionary review of such lower appellate decisions as are deemed necessary to the proper administration of criminal jurisprudence in this state. This system, by its very nature, dictates that the function of this court, with respect to noncapital cases, is to pass only on such legal questions as have been resolved by the courts of appeals.

It is not our duty to preemptively execute the function of a lower tribunal, and the preservation of our system of appellate review dictates

that we must forbear from the temptation of appropriating the rightful duties of the courts of appeals in the name of judicial economy. Because the court of appeals has not passed on the question of whether the admission of the extraneous offense testimony was harmless error, we must remand this case to that court so it can fulfill the function constitutionally assigned to it by the citizens of this state.

1. One court of appeals has even stated that it "concur[s] in Judge Onion's sentiment" bemoaning a remand as a wasteful maintenance of the case in appellate orbit. *See Adkins v. State*, 726 S.W.2d 250, 251 (Tex.App.—El Paso 1987), *aff'd*, 764 S.W.2d 782 (Tex.Cr.App.1988).