Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio


★ ★ ★  ★ ★ ★

## MEMORANDUM OPINION

No. 04-08-00699-CR

Reynaldo **REYES**, Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-2504
Honorable Juanita A. Vasquez-Gardner, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:       Catherine Stone, Chief Justice
               Phylis J. Speedlin, Justice
               Steven C. Hilbig, Justice

Delivered and Filed: November 18, 2009

AFFIRMED

In view of the appellant's petition for discretionary review filed on October 6, 2009, we withdraw this court's opinion and judgment dated September 2, 2009, and substitute this opinion and judgment.

Reynaldo Reyes, Jr. was convicted of aggravated sexual assault and sentenced to life in prison. On appeal, he complains the trial court erred in 1) refusing to allow him to elicit testimony

regarding the victim's prior sexual activity and 2) admitting extraneous-offense evidence during the guilt/innocence phase of trial. We affirm the judgment of the trial court.

### BACKGROUND

A.G. testified that she was thirteen years old when she was dating Reyes' step-son, Thomas. Her parents had forbidden her to date boys, but she often lied to them and went to Thomas' house before or after school. One morning, A.G. was hanging out at Thomas' house, eating breakfast tacos with him and Reyes. After Thomas went to the bathroom to shower, Reyes asked A.G. to pull her pants down. When she did not, he pulled them down himself and started licking her vagina and putting his fingers inside her vagina. Reyes then asked A.G. to put her mouth on his penis, which he exposed to her, but she said no. Soon after, Thomas finished showering and came out of the bathroom. Reyes drove A.G. and Thomas to school, where A.G. started crying and told Thomas what happened with his step-father; Thomas did not believe her. A.G.'s mother found out about the alleged assault later that night and took A.G. to the hospital for a sexual assault exam the next evening.

Reyes was charged in a four-count indictment with the offenses of aggravated sexual assault and indecency with a child by sexual contact.[1] The indictment contained an enhancement paragraph. In addition to A.G.'s testimony, the State introduced evidence that Reyes' saliva was found on the underwear A.G. gave to the sexual assault nurse examiner at the hospital. The jury returned a verdict of guilty on the two counts of aggravated sexual assault and a verdict of not guilty on the exposure count. The trial court found the enhancement paragraph to be true, and assessed a life sentence in both counts. Reyes now appeals.

---

[1] The State waived and abandoned Count III.

## DISCUSSION

In his first issue, Reyes argues that the trial court's refusal to allow him to elicit testimony regarding A.G.'s sexual activity during the time period of the offense violated his right of confrontation under the Sixth Amendment to the United States Constitution.[2] During a pretrial hearing, the defense requested to be allowed to elicit testimony regarding the fact that A.G. was sexually active with several partners during the pertinent time frame in which the sexual assault was alleged to have occurred. After an in-camera hearing, the trial court denied the request, and issued an order on the State's motion *in limine* prohibiting the defense from raising the issue of A.G.'s sexual activity, with the exception of her relationship with Thomas.

Evidence of a complaining witness's past sexual behavior, either in the form of specific instances of conduct or reputation or opinion evidence, is not admissible in a criminal trial for aggravated sexual assault. *See* TEX. R. EVID. 412(a), (b); *State v. Dudley*, 223 S.W.3d 717, 724 (Tex. App.—Tyler 2007, no pet.). There are exceptions for evidence that (A) is necessary to rebut or explain scientific or medical evidence offered by the State, (B) is of past sexual behavior with the accused offered by the accused upon the issue of whether the alleged victim consented to the charged sexual behavior, (C) relates to the motive or bias of the alleged victim, (D) is admissible under Rule 609, or (E) is constitutionally required to be admitted. TEX. R. EVID. 412(b)(2)(A)-(E). Even if it meets one of the exceptions, such evidence is inadmissible unless its probative value outweighs the danger of unfair prejudice. TEX. R. EVID. 412(b)(3).

---

[2] The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI.

A trial court has considerable discretion in determining whether to exclude or admit evidence. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). Absent an abuse of discretion, we will not disturb a trial court's decision to admit or exclude evidence. *See State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). Under this standard, we will uphold a trial court's evidentiary ruling so long as the ruling is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008).

Here, Reyes contends he needed to introduce the prior sexual history to attack A.G.'s credibility because, according to her own testimony outside the presence of the jury, she had had several consensual sexual encounters by the time she was 13 years-old and often lied to her parents to facilitate the relationships. In addition, Reyes sought to introduce the prior sexual history to rebut the State's medical/scientific evidence. Specifically, the State's expert witness told the jury that pursuant to Y-STR DNA testing—which examines the DNA strand associated with the Y chromosome—the saliva sample taken from A.G.'s underwear did not exclude Reyes as the donor, but did exclude his step-son Thomas. Accordingly, Reyes contends the jury, having been told only that A.G. was sexually involved with Thomas at the time of the assault, would have thought the DNA necessarily belonged to Reyes.

We disagree that the medical evidence presented at trial was so vague, and therefore cannot conclude that the prior sexual history was admissible to rebut or explain the scientific evidence offered by the State. Although the State's expert witness testified that according to Y-STR DNA testing Reyes could not be excluded as the donor of the saliva on A.G.'s underwear, the expert also stated that the inverse was true, meaning that either Reyes or a direct descendant or ancestor or

brother was included as the donor of the saliva. There was no indication that A.G.'s sexual history would reveal that A.G. had a relationship with any of Reyes' male blood relatives. Accordingly, the prior sexual history was not admissible to rebut or explain scientific evidence offered by the State. We likewise disagree that the prior sexual history was necessary to attack A.G.'s credibility because the evidence does not meet any of the exceptions listed in Rule 412. *See* TEX. R. EVID. 412(b)(2). Thus, the trial court did not err in refusing to admit A.G.'s prior sexual history. Reyes' first issue is overruled.

In his second issue, Reyes contends the trial court erred in admitting extraneous-offense evidence during the guilt/innocence phase of trial. We review the trial court's ruling on the admissibility of extraneous offenses for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). The trial court does not abuse its discretion as long as its ruling is within the "zone of reasonable disagreement." *De La Paz*, 279 S.W.3d at 343-44; *Montgomery*, 810 S.W.2d at 391. "A trial court's ruling is generally within this zone if the evidence shows that 1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury." *De La Paz*, 279 S.W.3d at 344.

"It is a fundamental tenet of our system of jurisprudence that an accused must only be tried for the offense of which he is charged and not for being a criminal in general." *Owens v. State*, 827 S.W.2d 911, 914 (Tex. Crim. App. 1992). Because extraneous offense evidence carries with it the inherent risk that a defendant may be convicted because of his propensity for committing crimes generally, *i.e.*, his bad character, rather than for the commission of the charged offense, courts have

historically been reluctant to allow evidence of an individual's prior bad acts or extraneous offenses. Under Rule 404(b) extraneous offense evidence may be admissible only if it tends to prove a material fact in the State's case, apart from its tendency to demonstrate an accused's general propensity for committing criminal acts. *See* TEX. R. EVID. 404(b).

Carolyn Rice Wisenbaker testified that, in 1987, she was an eleven or twelve year-old girl spending the night at her friend's aunt's house. She awoke in the middle of the night to find Reyes, the aunt's boyfriend, licking her anus. She was scared and shaking and walked home by herself in the middle of the night. Reyes was charged with aggravated sexual assault and pleaded no contest to injury to a child. The State argued that the door to this evidence was opened by Reyes during questioning of Wanda Reyes, Reyes' wife, and Thomas. When the defense asked Wanda whether she believed Reyes assaulted A.G., she answered, no, "because I know how Rey believes about stuff like that." On cross-examination, the prosecutor asked Wanda to tell her how Reyes feels about molestation. Wanda replied that he "doesn't like people that do that," and when they watched a news report about molesters on television together, Reyes would say, "assholes or whatever." On direct examination, Thomas stated that if Reyes had assaulted A.G., he would not testify on Reyes' behalf and also stated, "I don't think [Reyes] would do nothing like that." The State argued that the extraneous-offense evidence should come in because both Wanda and Thomas knew that Reyes had been convicted of the prior offense involving Ms. Wisenbaker and therefore left a false impression in the jurors' minds that Reyes would never commit this type of offense. Additionally, the State argued that the extraneous-offense evidence should come in to rebut 1) the defensive theory that A.G. planted the saliva on her underwear using Reyes' snuff spit cup and 2) the theory of lack of opportunity which was brought up by Thomas' testimony that he did not shower that morning, but

instead only washed up in the bathroom with the door open and therefore Reyes did not have an opportunity to assault A.G.

After taking the issue under advisement overnight, the trial court ruled that the extraneous-offense evidence was admissible, stating that there had been a vigorous and impugning cross-examination of A.G. and that there was significant cross-examination regarding the fact that A.G. may have planted the DNA evidence. Additionally, there was questioning regarding the lack of opportunity for Reyes to have committed the offense when Thomas was nearby. The trial court also stated that it had conducted a balancing test and found that the extraneous-offense evidence was more probative than prejudicial. Before Ms. Wisenbaker testified, the trial court instructed the jury that they could only consider the following testimony "in helping you, if it does, to determine bias or motive, identity, opportunity, or to rebut a defensive theory." The same instruction was contained in the jury charge, which further instructed the jury that the extraneous-offense evidence could be used to pass upon the credibility of the defendant who testified as a witness in his own behalf.

Reyes argues that he did not open the door through questioning of Wanda or Thomas and that both witnesses merely gave opinion testimony, which cannot be rebutted or impeached. He further contends that the extraneous-offense evidence was not relevant to a material issue in the case, and the State failed to articulate how Ms. Wisenbaker's testimony would help to establish that Reyes had ample opportunity to assault A.G. Reyes also argues that the extraneous-offense evidence was inadmissible to rebut the defensive theory that A.G. planted the saliva on her underwear and to show that the allegations were fabricated by A.G. Reyes further contends that even if the evidence is relevant, it was so inherently prejudicial that its potential to improperly inflame the jury far outweighed its relevance under Rule 403.

The State responds that the defense opened the door to the admission of the extraneous-offense evidence and that the evidence was also admissible under the "doctrine of chances." *See De La Paz*, 279 S.W.3d at 347 (discussing Wigmore's theory that highly unusual events are unlikely to repeat themselves inadvertently or by happenstance). While we disagree that the extraneous-offense evidence was admissible under the "doctrine of chances," we conclude that the defense did open the door to Ms. Wisenbaker's testimony when it left a false impression with the jury that Reyes would never commit this type of act. *See Daggett v. State*, 187 S.W.3d 444, 453 n.24 (Tex. Crim. App. 2005) (holding that extrinsic evidence may be offered to rebut witness's global disclaimer of misconduct where directly relevant to the offense charged). While the evidence was certainly prejudicial to Reyes, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Ms. Wisenbaker's testimony was brief and not cumulative, and it could even be argued that it had the potential to assist Reyes because, in closing, the defense compared her shaky demeanor to A.G.'s calm composure and suggested that if Reyes had actually assaulted A.G., she would have been as upset as Ms. Wisenbaker had been while testifying. We cannot say the trial court's decision to allow the evidence was outside the zone of reasonable disagreement. Accordingly, the evidence was properly admitted before the jury, and we overrule Reyes' second issue.

## CONCLUSION

The judgment of the trial court is affirmed.

Phylis J. Speedlin, Justice

DO NOT PUBLISH