COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| RUSSEL ROTZ, | § | No. 08-08-00203-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 41st District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC#20060D00758) |
| | § | |

**O P I N I O N**

This is an appeal from a jury conviction for the offense of aggravated sexual assault of a child. The jury assessed punishment at ten years' imprisonment and a fine of $10,000. We affirm.

**BACKGROUND**

Linda Black testified that on November 29, 2005, she was a registered nurse working at Ross Middle School in El Paso, Texas. On that date at about 11:45 a.m., three young girls came to her office. One, a sixth grader, was nervous and was wringing her hands. She proceeded to tell Black that a person she called "Grandpa" was touching her private parts. This was occurring for a period longer than a year. Black notified the school principal, and the police were notified.

The thirteen-year-old complainant testified that she and her father, a single working parent, rented an apartment from Appellant when the complainant was about five years old. Appellant and his wife baby-sat the complainant so that Appellant's father could save the $400 per month day-care fee. As the complainant's father worked odd hours as a carpenter, a room was provided at Appellant's house so that the complainant could spend the night. She did not share the room with anyone. She thought of Appellant as her grandfather.

There were no difficulties with this arrangement until the complainant turned seven. During the summer, Appellant took the complainant to an apartment he was renting out. In one of the bedrooms, Appellant pulled down the zipper of her shorts and began rubbing her vagina. He then pulled down her shorts and underwear and licked her vagina. Appellant refused her requests to stop. Appellant did not take his clothes off and she did not touch him. Appellant told her not to tell anyone, and they went back home.

These sexual assaults continued on a weekly basis; usually in her room at Appellant's house. The last such attack occurred several days before she made her outcry statement to the school nurse.

During cross-examination, the complainant testified that she considered Appellant and his wife to be like her grandparents. She stayed with them on a daily basis. They bought her food and clothes, and she went with them on out-of-town trips. The complainant stated that she never told anyone about the illicit sexual acts for fear that her father would kill Appellant. She did not tell Appellant's wife because she was afraid that it would destroy their marriage.

The complainant related that she once took a massager from Appellant's room. On another occasion, she had attempted to use Appellant's credit card on the computer to buy pornography which depicted, among other things, oral sex. She tried to effect this purchase on just one occasion, and she was unsuccessful with the download. The complainant testified that she had not had sexual relations with anyone other than Appellant.

Michael Timmons of the El Paso Police Department's Crimes Against Children unit testified that he witnessed the interview of the complainant by a forensic interviewer at the Child Advocacy Center. During this interview, the complainant related that from the time she was seven until she was eleven, she was molested by Appellant. She stated that she had been licked on her vagina on many occasions.

Twenty-year-old Aaron Hernandez testified that he was also sexually molested by Appellant. When he was between the ages of three and six years old, he lived with his single mother in an apartment she rented from Appellant. The apartment was situated behind Appellant's house. As Hernandez's mother was a college student, Appellant baby-sat Hernandez at Appellant's house. Appellant became like a grandparent. Appellant bought things for Hernandez. During this time, Appellant sexually abused Hernandez by putting his fingers in Hernandez's rectum. This would happen approximately three to four times a week, and usually took place in Appellant's bedroom, or in the shower at times when the mother was at school. Hernandez was afraid to tell Appellant to stop the abuse, or to tell anyone else because Appellant had stated that he would kill his mother if he told. When Hernandez was six years old, he told him mother, and they moved to New Jersey to get away from Appellant.

Appellant testified on his own behalf. He stated he was self-employed and owned several apartments. He rented an apartment to the complainant's father and his eighteen-month-old daughter. Appellant treated the complainant as a granddaughter, and he helped her grow up. He encountered some difficulty with the complainant when he found out that she had used his credit card to charge some pornography. Appellant testified that he had put the complainant "in a corner" by telling her she had to repay the money she spent on pornography, and she reacted by trying to frame him by falsely accusing him of sexual abuse. Appellant stated that he had no sexual contact with the complainant. He stated she was a liar who could cry on demand.

Charles Lind, a licensed professional counselor, testified that he had known Appellant for approximately twenty-five years. He had visited at Appellant's home on many occasions, and he knew the complainant. During those visits, he did not observe anything unusual in the complainant's behavior towards Appellant.

Eunice Truax, Appellant's older sister, testified that she knew the complainant, and she had gone on family trips in the company of the complainant. She never noticed anything unusual in the complainant's actions or demeanor towards Appellant.

**DISCUSSION**

In Appellant's sole issue on appeal, he asserts that the court erred by allowing the testimony of a witness regarding an extraneous offense. During the cross-examination of the complainant, Appellant's counsel began to question her about the incident with the credit card and the pornography. The State objected on the grounds of relevance and with regard to a motion in limine. The witness was taken on voir dire and she testified regarding the credit card incident. Defense counsel stated that it was their defensive posture that the complainant made her outcry to the school nurse to preempt Appellant from telling her father about the credit cards. The State then withdrew its objection and the case continued.

Prior to the testimony of Detective Timmons, a hearing was conducted outside the presence of the jury to determine the admissibility of Aaron Hernandez's testimony. The State argued, among other things, that his testimony was admissible under Texas Rule of Evidence 404(b) to rebut the defensive posture of the implication of fabrication or motive to lie. The State maintained that the facts that Hernandez related were similar enough to the underlying charge to be admissible. Appellant then objected that it was premature to allow the testimony because no defensive theory had been developed to allow the introduction of an extraneous offense.

A voir dire examination of Hernandez was conducted, and at the conclusion of his testimony, Appellant again objected that the testimony was premature as no defensive theory had yet been presented. The court overruled Appellant's objection and found that: (1) Aaron Hernandez's testimony was admissible to rebut the implied defense of fabrication raised by Appellant, and (2) the

probative value of the evidence was not outweighed by its prejudicial effect.[1]

Initially, we must respond to the State's contention that Appellant had waived his contention on appeal. Generally, a party cannot complain on appeal concerning the trial court's admission of exclusion of evidence unless the objecting party made a timely objection, request, or motion concerning the matter, gave specific legal grounds for the desired ruling, and pursued the matter to an adverse ruling. TEX. R. APP. P. 33.1(a); *Brooks v. State,* 990 S.W.2d 278, 286 (Tex. Crim. App. 1999). In order to preserve error, the complaint on appeal must comport with the objection raised at trial. TEX. R. APP. P. 33.1(a); *Martinez v. State,* 91 S.W.3d 331, 336 (Tex. Crim. App. 2002). The generally acknowledged policies of requiring specific objections are twofold. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977). First, a specific objection is required to inform the trial judge of the basis of the objection and afford the court the opportunity to rule on it. *Id*. Second, a specific objection is required to afford opposing counsel an opportunity to remove the objection or supply other testimony. *Id.* However, where the correct ground for exclusion was obvious to the judge and opposing counsel, no waiver results from a general or imprecise objection. *Id*.

A trial objection that the admission of extraneous offense evidence was premature was not based on Rule 404(b);[2] therefore, it did not comport with a Rule 404(b) contention raised on appeal.

---

[1]  In the court's charge to the jury at the guilt innocence stage of trial, the jury was instructed:

> You are instructed that if there is any evidence before you in this case regarding the defendant having committed an alleged offense other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense, in any, and even then you may only consider the same to rebut the defensive theory of fabrication, if any, in connection with this offense, if any, alleged against him in the indictment and for no other purpose.

[2]  Under the Texas Rules of Evidence 404(b), evidence of other crimes, wrongs, or acts is not admissible "to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). However, it may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *De La Paz v. State*, 279 S.W.3d 336, 342-43 (Tex. Crim. App. 2009). These exceptions are neither mutually exclusive nor collectively exhaustive. *Id.* at 343. The rule

*See Crooks v. State,* No. 11-97-00115-CR, 1998 WL 34193980, at *2 (Tex. App.–Eastland October 22, 1998, no pet.) (not designated for publication). Here, Appellant objected solely on the ground that the introduction of the extraneous offense evidence was premature, not that the offenses were too dissimilar to be admissible. Accordingly, Appellant has waived his contention on appeal. However, we note that the matter of the dissimilarities of the two offenses was raised in the State's initial presentation to the court concerning the admissibility of the extraneous offense. As such, as the matter was in some sense before the court, although not in a degree to preserve error. In the interest of justice, we will address Appellant's complaint on appeal.

The admissibility of evidence is within the discretion of the trial court and will not be overturned absent an abuse of discretion. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). As long as the trial court's ruling was within the zone of reasonable disagreement, the appellate court should affirm. *Id*. (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)). Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court. *Id*. An appellate court owes no less deference to the trial judge in making this decision than it affords him in making any other relevancy determination. *Id*.

When a trial court further decides not to exclude the evidence, finding that the probative value of the evidence is not outweighed by the danger of unfair prejudice, this decision too shall be given deference. *Id.* Thus, the court of appeals cannot simply substitute its own decision for the trial court's. *Id.* The appellate court should not conduct a *de novo* review of the record with a view to making a wholly independent judgment whether the probative value of evidence of "other crimes,

excludes only that evidence that is offered solely for the purpose of proving bad character and conduct in conformity with that character. *Id.*

wrongs, or acts" is substantially outweighed by the danger of unfair prejudice. *Id* . It should reverse the judgment of the trial court "rarely and only after a clear abuse of discretion." *Id.³*

An extraneous offense may be admissible to rebut a defensive theory of "fabrication," "frame-up," or "retaliation." *See Bass v. State,* 270 S.W.3d 557, 563 (Tex. Crim. App. 2008); *Wheeler v. State,* 67 S.W.3d 879, 888 n.22 (Tex. Crim. App. 2002); *Bargas v. State,* 252 S.W.3d 876, 891 (Tex. App.–Houston [14th Dist.] 2008, no pet.); *Dennis v. State,* 178 S.W.3d 172, 177 (Tex. App.–Houston [1st Dist.] 2005, pet. ref'd). To be admissible for rebuttal of a fabrication defense, the extraneous offense must be "similar to the charged one and an instance in which the 'frame-up' motive does not apply." *Wheeler*, 67 S.W.3d at 887 n.22; *Dennis*, 178 S.W.3d at 178. Although some similarity is required, the requisite degree of similarity is not as exacting as necessary when extraneous-offense evidence is offered to prove identity by showing the defendant's "system" or modus operandi. *Dennis*, 178 S.W.3d at 179. The degree of similarity required to rebut a defensive issue is not great; the extraneous offense need not be identical to the charged offense. *See Blackwell v. State*, 193 S.W.3d 1, 13 (Tex. App.–Houston [1st Dist.] 2006, pet. ref'd); *see also Dennis*, 178 S.W.3d at 178-79.

Appellant relies on *Owens v. State*, 827 S.W.2d 911, 915 (Tex. Crim. App. 1992), in arguing that the extraneous acts were not so similar to the charged offense that they would fall within an exception of Rule 404(b). The *Owens* trial court had admitted evidence of a prior sexual assault of a young female on the basis that such evidence established a "system," and the Texas Court of Criminal Appeals analyzed that basis as one relating to Owens' "*modus operandi*" or

---

[3] While the court found the probative value of the evidence was not outweighed by its prejudicial effect, Appellant did not object to this finding either at trial or on appeal. Accordingly, we will not address the issue. *See Castillo v. State,* No. 08-04-00377-CR, 2006 WL 1710062, at *7 (Tex. App.–El Paso June 22 2006, no pet.) (not designated for publication).

"methodology." *See id.* at 914-15. The Court of Criminal Appeals concluded that the extraneous offense was not so similar to the charged offense that it would establish such a "system." Specifically, the Owens court observed that:

> When the State seeks to admit extraneous offense evidence under a theory of "system" or modus operandi, "there must be a showing that the extraneous offense which was committed by the defendant was 'so nearly identical in method [to the charged offense] as to earmark them as the handiwork of the accused.'"

*Id.* at 915. The *Owens* court then concluded that the extraneous offense and the charged offense were not so idiosyncratically similar as to show that "the two offenses were the handiwork of the same individual." *Id.*

We note that the *Owens* court analyzed the admission of the evidence to determine whether such evidence was relevant as a showing of a "system" of operation. There, the State failed to reach the requisite high standard in showing similarity between the extraneous acts and the charged offense. *Id.* In the present case, the evidence was offered to rebut a defensive theory which, as stated above, invokes a lesser degree of similarity. *Owens* is thus distinguishable from the case at bar.

Here, the extraneous offense was clearly similar to the charged offense. Both children were tenants of Appellant whose single parents were absent from the rented apartments for extended periods of time. Appellant baby-sat both children and he assumed a familiar type of relationship with both children to the extent he was considered a putative grandparent. He bought both children various items, and went places with them. The assaults in both cases were usually committed in Appellant's home. The sexual assaults in each instance occurred over extended periods of time. Both children were young in age. While there are dissimilarities in gender and the nature of the sexual contact, we find that none of the dissimilarities are of such consequence or magnitude to preclude finding that the offenses were sufficiently similar. *See Blackwell,* 193 S.W.3d at 13.

Appellant's sole issue is overruled.

## CONCLUSION

We affirm the judgment of the trial court.


GUADALUPE RIVERA, Justice

March 24, 2010

Before Chew, C.J., Rivera, J., and Garcia, Judge
Garcia, Judge, sitting by assignment

(Do Not Publish)