**Affirmed and Memorandum Opinion filed December 15, 2016.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-15-00988-CR

---

## JOSE ALDAPE, Appellant

### V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 180th District Court
Harris County, Texas
Trial Court Cause No. 1361921**

---

## MEMORANDUM OPINION

This is an appeal from a conviction for robbery. In a single issue, appellant argues that the trial court abused its discretion by admitting evidence of two extraneous offenses. Appellant does not dispute that the challenged evidence has relevance apart from character conformity, as required by Rule 404(b). However, citing Rule 403, appellant argues that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. After balancing the

appropriate interests, we conclude that the trial court did not abuse its discretion by admitting the evidence. We therefore affirm the trial court's judgment.

## BACKGROUND

The complainant ran a small business of buying and reselling used items. One day, appellant came to the complainant's business and noticed several boxes of specialty hoses commonly used in sandblasting. The hoses appeared to be new and valuable. The complainant explained that the hoses were donated to him by a company that needed to empty its warehouse. Appellant expressed an interest in the hoses, saying that he knew of a third party who may want to buy them. Because the complainant had a prior business relationship with appellant, the complainant allowed appellant to take a sample of the hoses, offering to share in the earnings if a buyer could be found.

Later that day, appellant contacted the complainant, claiming that he had found a buyer for the hoses. Appellant said that he would meet the complainant at the complainant's house that evening to discuss the terms of the deal.

When the complainant arrived at home, appellant was already there, waiting outside next to a large white truck. Appellant was dressed in his normal attire, but as the complainant approached him, appellant unbuttoned his top shirt and revealed an undershirt that identified him as a federal agent. Appellant told the complainant that the hoses were stolen and that he was in serious trouble. Appellant exhibited a firearm and instructed the complainant to get inside the truck. Both men climbed into the backseat. Another man, never identified, drove the truck away.

Appellant told the complainant that he wanted to negotiate. Specifically, appellant said that he would release the complainant and spare the complainant a trip to jail if the complainant paid him $10,000. The complainant did not believe

that appellant was a federal agent, but the complainant feared that if he did not cooperate, then appellant might beat or kill him. The complainant said that he did not have $10,000, but he offered to get $1,000 from a relative in exchange for his release. Appellant agreed to those terms. The men drove the complainant to his relative, obtained the cash, and then dropped off the complainant several blocks from his house, warning him not to contact the police. The complainant reported the incident to police the very next day after he received harassing phone calls from appellant. The police tracked down appellant sometime later, arresting him in the same truck that was used in the robbery.

During opening statements at appellant's trial, the prosecutor portrayed appellant as a "shakedown artist" who had targeted the complainant because the complainant was an undocumented immigrant. The prosecutor argued that appellant had perceived the complainant as "somebody who wouldn't go to the police" for fear of being deported.

Defense counsel presented a different picture during his opening statement. Counsel argued, "This case isn't about a shakedown. It's about the [complainant] trying to get the upper hand on [appellant] over some sand blasting equipment." Counsel did not expressly accuse the complainant of "fabricating" his story, but his questions throughout the trial suggested that the complainant had a motive to lie. For example, counsel asked one witness whether the complainant, in exchange for his testimony, was being "rewarded" with a special type of visa that would allow him to lawfully stay in this country. Counsel also questioned whether the complainant had paid appellant to dispose of the hoses because the complainant knew that the hoses were stolen.

In a hearing outside the presence of the jury, the trial court was asked to consider whether the defense had opened the door for the introduction of evidence

of extraneous offenses. Citing the defense's opening statements and suggestive questioning, the prosecutor argued that evidence of two extraneous offenses should be admitted to rebut the defense's theory that the complainant had fabricated his story. The trial court heard a proffer of the rebuttal evidence and ruled that it was admissible.

Before the rebuttal evidence was presented, the trial court gave the jury a limiting instruction, which stated as follows:

> You are instructed that if there is any evidence presented before you in this case regarding defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any, and even then, you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment, and for no other purpose.

The rebuttal evidence was sponsored primarily by two witnesses, both from the Hispanic community, who claimed that they were exploited by appellant in a pattern similar to the kind experienced by the complainant. One of the witnesses, A.M., testified that he was selling used clothing in a market when he was approached by appellant. According to A.M., appellant displayed a badge and claimed that he was a federal agent investigating stolen clothing. A.M. told appellant that he had all of the permits and documentation required to legally sell his merchandise. Appellant escorted A.M. to a truck under the pretense of examining A.M.'s paperwork. The truck was the same make and model as the truck involved in the charged offense. Appellant and A.M. sat in the backseat, while another man sat in the driver's seat. At one point, appellant instructed A.M. to empty his pockets. Believing that appellant was an actual law enforcement

officer, A.M. surrendered his wallet, watch, cellphone, and money. The incident happened three days before the events in the charged offense, and when appellant was eventually apprehended, A.M.'s identification was found in the truck where appellant had been a passenger.

The other witness, A.H., testified that he was approached by appellant approximately three weeks before the events in the charged offense. A.H. said that appellant came to him in the parking lot of a nightclub, searching for a gang member. Appellant displayed what appeared to be a police badge. When A.H. said that he did not recognize the name of the gang member, appellant asked A.H. to come to his truck to see a picture of the gang member. The truck was the same make and model as the truck involved in the other incidents described, and as with those incidents, there was another man in the driver's seat who always remained in the vehicle. When A.H. approached the truck, appellant quickly twisted A.H.'s arm, handcuffed him, and said that A.H. was the person whom he had been looking for all along. Appellant put A.H. into the backseat of the truck and instructed the driver to head to "the station." A.H. did not believe that appellant was a police officer because, during the drive, appellant asked A.H. for money and threatened to kill A.H.'s family. A.H. offered appellant the money in his pocket, which amounted to roughly $500. Appellant took the money as well as a handgun that A.H. had on his person, then dropped off A.H. on the side of the road. When appellant was later apprehended, a handgun magazine that matched the type of handgun taken from A.H. was found in the truck.

## ANALYSIS

Citing Rule 403 of the Texas Rules of Evidence, appellant argues that the evidence of extraneous offenses should have been excluded because its probative value was substantially outweighed by the danger of unfair prejudice. A ruling on

5

the balance between probative value and the danger of unfair prejudice is a question left to the trial court's sound discretion. *See De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). As long as the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion, and we, as the reviewing court, may not disturb the trial court's decision. *Id.* at 343–44.

We consider four factors when analyzing a trial court's ruling under Rule 403: (1) the probative value of the evidence; (2) the potential for the evidence to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *See State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005).

***Probative Value.*** When analyzing the probative value of evidence under Rule 403, we must consider more than simply whether the evidence is relevant. *See Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). "Probative value" refers to the inherent probative force of the evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation. *Id.*

Here, the extraneous-offense evidence was offered to rebut the defense's theory of fabrication, and the evidence achieved that purpose by demonstrating that appellant had a modus operandi. The evidence showed that appellant would first take on the persona of a law enforcement officer; then he would target members of the Hispanic community, likely because they would not report a crime to police, depending on their immigration statuses; then he would lure or force his victims into the backseat of a specific truck that was driven by another man; and then he would demand money or personal items.

"Evidence of a defendant's particular modus operandi is a recognized exception to the general rule precluding extraneous offense evidence, if the modus

6

operandi evidence tends to prove a material fact at issue, other than propensity." *Owens v. State*, 827 S.W.2d 911, 915 (Tex. Crim. App. 1992). The material fact at issue in this case was whether the complainant had fabricated his story. Appellant suggested that the complainant had lied for one of several reasons—whether to obtain the "upper hand" in a business transaction, or to qualify for a visa, or to dispose of property that he believed was stolen. The extraneous-offense evidence tended to make these fabrication theories less probable. *See Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (in a prosecution for indecency with a child, extraneous-offense evidence that the defendant had molested two other girls was admissible because it made less probable the defense's theory that the complainant's story was a "pure fabrication"). By showing that unrelated persons were exploited under circumstances that were both similar and unlikely to be repeated so many times, the evidence supported a finding that the complainant was actually telling the truth. *See De La Paz*, 279 S.W.3d at 347 ("Under the 'doctrine of chances,' evidence of such a highly unlikely event being repeated three different times would allow jurors to conclude that it is objectively unlikely that appellant was correct . . . ."); *see also Robbins v. State*, 88 S.W.3d 256, 268 n.10 (Tex. Crim. App. 2002) (citing other authorities for the position that the "logical improbability" theory leads to purely objective inferences, having nothing to do with the subjective assessment of the defendant's character).

***Potential for Irrational Impression.*** We first note that there was evidence that appellant used a firearm in the charged offense, but not in the extraneous offenses. To that extent, the extraneous offenses were no more heinous than the charged offense, meaning that there was a reduced risk that the evidence would affect the jury in an emotional way. *See Taylor v. State*, 920 S.W.2d 319, 323 (Tex. Crim. App. 1996).

But the extraneous offenses were factually similar to the charged offense, and whenever the offenses are similar, there is always a potential that the jury may be unfairly prejudiced by the defendant's character conformity. *See Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996). The trial court can minimize the impermissible inference of character conformity with a limiting instruction. *Id.* And in this case, the trial court gave an oral instruction before the evidence was presented. That instruction was also repeated in the court's guilt-innocence charge.

Appellant argues that the trial court's limiting instructions were ineffective because they said that the jury could only consider the evidence "in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Appellant asserts that none of these purposes was pertinent in this case, and he criticizes the trial court for not mentioning a more specific purpose, such as a rebuttal through the doctrine of chances.

We agree that a specific limiting instruction would have been more appropriate. *Cf. Daggett v. State*, 187 S.W.3d 444, 454 (Tex. Crim. App. 2005) ("Because Hailey's testimony was admissible only to rebut appellant's blanket statement of good conduct with minors, the trial court should have given the jury an instruction that it could use that testimony *only* in assessing appellant's credibility, not as any proof that he committed the charged offense or as any proof of some 'plan' to have a sexual relationship with Brittany." (emphasis in original)). However, appellant did not request a more specific limiting instruction, and the instructions that were given told the jury that it could only consider the extraneous-offense evidence for the purposes mentioned—and "no other purpose." The implication from the "no other purpose" provision is that the jury did not, and could not, consider the extraneous-offense evidence for propensity purposes or as

8

substantive evidence of appellant's guilt. *See Blackwell v. State*, 193 S.W.3d 1, 16 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

**Time.** The rebuttal portion of the trial began on the second and final day of the guilt-innocence phase. The prosecution called a total of four witnesses: two police officers, who briefly discussed how they worked on cases involving impersonation offenses; and A.M. and A.H., who testified about their encounters with appellant. According to the trial court's docket sheet, the rebuttal lasted for less than two and one-half hours, and for thirty of those minutes, the jury was on a break. This time spent on the extraneous offenses does not appear to have been so long as to have seriously distracted the jury from the consideration of the charged offense. *Id.* at 18 (holding that time factor was neutral where testimony concerning the extraneous offenses was not unduly lengthy).

**The Proponent's Need.** For this final factor, we consider whether the proponent had other probative evidence available to establish the fact of consequence, and whether that fact related to an issue in dispute. *See De La Paz*, 279 S.W.3d at 349.

As we have already explained, the defense's theory was that the complainant was lying about his story, and the fact in dispute was whether a robbery was actually committed. As possible motives for the complainant's suspected lies, the defense suggested that the complainant wanted the "upper hand" in a business transaction, or to obtain a visa, or to dispose of property that he believed was stolen. To lend support to this final suspected motive, the defense elicited testimony from appellant's mother, who said that appellant came into possession of a large amount of hoses around the same time as the charged offense.

Because the defense contested the very commission of the charged offense, and there was some affirmative evidence that might suggest a fabrication theory,

the prosecution had a corresponding need to rebut that theory with the introduction of extraneous-offense evidence. *See Beam v. State*, 447 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding that the proponent's need for evidence is strong when the evidence supports an element of a hotly contested issue). That need was also heightened because the prosecution did not produce any evidence during its case-in-chief that corroborated the complainant's version of the events, other than some testimony that police gear was found in the truck when appellant was arrested. Although this evidence supported the notion that appellant had impersonated an officer or federal agent, consistent with the complainant's story, the defense made a point of noting that appellant was not the only person in the truck, implying that appellant was not in exclusive possession of the items found within it.

*Balance.* Once the trial court finds that evidence of an extraneous offense is relevant, the probative value of that evidence is presumed to be weightier than its prejudicial effect unless the trial court determines otherwise. *See Montgomery v. State*, 810 S.W.2d 372, 388 (Tex. Crim. App. 1990) (op. on reh'g). Based on the factors discussed above, we cannot say that the trial court clearly abused its discretion by finding that the probative value of the evidence actually outweighed the danger of unfair prejudice. The probative value of the evidence was strong because it tended to rebut a defensive theory that the complainant was lying. This theory went to the heart of the charged offense, and the State had a need to address it. The trial court was given no reason to believe that the evidence would require much time to develop—and in the end, not much time was required. Although the evidence was factually similar to the charged offense, which presented a danger that the jury may reach a verdict on the basis of character conformity, the trial court attempted to mitigate this danger with a limiting instruction. We conclude

that the trial court's decision to admit the evidence fell within the zone of reasonable disagreement.

## CONCLUSION

The trial court's judgment is affirmed.


/s/     Tracy Christopher
         Justice


Panel consists of Justices Boyce, Christopher, and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).